IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Robbie Collins,                          )    Civil Action No.:2:12-00710-CMC-BHH
                                         )
                      Petitioner,        )
                                         )    **REPORT AND RECOMMENDATION**
              v.                         )    **OF MAGISTRATE JUDGE**
                                         )
Anthony Padula,                          )
                                         )
                      Respondent.        )

The Petitioner, a state prisoner proceeding *pro se*, seeks habeas relief pursuant to 28 U.S.C. § 2254. This matter is before the Court upon Respondent's Motion for Summary Judgment (Dkt. No. 34).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review the instant petition for relief and submit findings and recommendations to the District Court.

The Petitioner brought the instant habeas action on or about March 5, 2012. (See Dkt. No. 1.) On October 1, 2012, Respondent filed a Motion for Summary Judgment. (Dkt. No. 34; see also Dkt. No. 33; Dkt. No. 35; Dkt. No. 36.) By order filed October 4, 2012, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 37.) Petitioner filed his Response in Opposition on or about November 8, 2012. (Dkt. No. 45.) Petitioner has since filed several supplements to his Response in Opposition. (See Dkt. No. 55; Dkt. No. 56; Dkt. No. 57; Dkt. No. 58; Dkt. No. 60.)

## PROCEDURAL HISTORY

The Petitioner is currently confined at Lee Correctional Institution. In August of 2005, the Lee County Grand Jury indicted the Petitioner for murder, conspiracy to commit murder, unlawful possession of a pistol, and possession of a firearm during a crime of violence. (R.

at 511-14.) Petitioner was represented at trial by Charlie Johnson, Jr. Esquire. (See Dkt. No. 33-1 at 5 of 164.) Petitioner proceeded to a jury trial before the Honorable Clifton Newman on August 16-18 of 2005. (R. at 1-509.) At the conclusion of the presentation of evidence, Judge Newman granted Mr. Johnson's Motion for a Directed Verdict as to the conspiracy to commit murder charge. (R. at 444.) Judge Newman also struck the charge of unlawful possession of a pistol. (R. at 445.) On August 18, 2005, the jury found Petitioner guilty of murder and possession of a firearm during a crime of violence. (R. at 504.) Judge Newman noted that a probation violation was pending; he proceeded with sentencing as well as the probation violation hearing. (R. at 506-07.)[1] Judge Newman sentenced Petitioner to a period of confinement for life on the murder conviction and five years for possession of a weapon during a crime of violence. (R. at 509.) For the probation violation, Judge Newman sentenced Petitioner to ten years of confinement. (R. at 59.)

Petitioner appealed and was represented on appeal by Robert M. Dudek, Esquire, of the South Carolina Commission on Indigent Defense. (See Dkt. No. 33-7; Dkt. No. 33-8.) In an Anders[2] brief filed on December 14, 2006, appellate counsel raised the following issue:

> Whether the court erred by admitting letters allegedly written by appellant to co-defendant Jumal Prescott since Prescott could not properly authenticate the letters under Rule 901, SCRE since the only evidence offered was that his familiarity with appellant's handwriting came after the criminal process began, and after both men were charged with the same crime?

(Dkt. No. 33-8 at 4 of 12.) Mr. Dudek also filed a petition to be relieved as counsel. (Id. at 10 of 12.) Petitioner filed a *pro se* Response to the Anders brief. (Dkt. No. 33-11; see also Dkt. No. 33-13.) In his *pro se* Response, Petitioner raised the following two issues:

> Whether the court erred by admitting evidence without a search warrant?

---

[1]As Respondent notes in his Motion for Summary Judgment, at the time of the murder, the Petitioner was on probation for a prior conviction for reckless homicide. (R. at 506-07.)

[2]Anders v. California, 386 U.S. 738 (1967).

2

> Whether the court erred by admitting evidence without proof of chain of custody?

(Dkt. No. 33-11 at 4 of 10.)

In an unpublished opinion filed on February 11, 2008, the South Carolina Court of Appeals dismissed Petitioner's appeal and granted counsel's petition to be relieved. (Dkt. No. 33-14.) The Court of Appeals issued the remittitur on February 27, 2008. (Dkt. No. 33-15.)

On or about February 22, 2008, Petitioner filed an application for post-conviction relief ("PCR"). (See Dkt. No. 33-5 at 37-51 of 76.) Petitioner contended in that application that he was being held in custody unlawfully for the following reasons:

(a) Violation of Due Process; Insufficient Indictment; Denial of Due Process

(b) Ineffective Assistance of Counsel

(c) Prosecutorial Misconduct

(Dkt. No. 33-5 at 38 of 76.) In the attachments to his PCR application, Petitioner argued as follows (verbatim):

> The court deprived applicant of due process. In the instant case for murder when the indictment failed to charge that the applicant murdered the alleged victim. Also failing to show time and place of death in the indictment.

(R. at 540.) Petitioner also raised numerous claims of ineffective assistance of counsel. Petitioner first claimed counsel was ineffective because he never told the Petitioner about the letters the State planned to introduce. (R. at 546.) Petitioner then claimed counsel was ineffective because Petitioner told counsel the state was only using part of the letters, but counsel stated that he wanted to have the last argument. (R. at 546.) Third, Petitioner contends his counsel was ineffective as follows (verbatim):

> Applicant claims that he notified his lawyer that he had an alibi of his whereabouts. Witness to Applicant whereabouts contacted counsel notifying him Applicant's whereabouts could be accounted for on the night of the alleged incident, and would be willing to testify. Counsel advised Applicant that alibi witness wouldn't be necessary. Applicant also had Father to attest

3

to his whereabouts but Counsel said that would be a conflict of interest because he was Applicant's father.

(R. at 546.) Fourth, Petitioner alleged that his counsel advised him not to testify so that counsel could have the last argument, but counsel had lost that privilege. (R. at 546.) Fifth, Petitioner "claim[ed] that due to counsel's lack of investigation . . . evidence illegally obtained was admitted into evidence." (R. at 546.)

In his sixth allegation against his counsel, Petitioner alleged counsel "drew a conclusionary presumption of his guilt in his closing argument and concede guilt." (Id.) Seventh, Petitioner claims counsel was ineffective "for not requesting the lesser included offense as a directed verdict since malice was not proven. (R. at 546.) Eighth, Petitioner asserts that counsel "was informed of evidence that could benefit the defense, but counsel waited until a week before trial to investigate the evidence," and "[d]ue to the procrastination the evidence/witness was unavailable." (R. at 547.) In his ninth allegation concerning ineffective assistance of counsel, Petitioner claims that counsel should have objected to the indictment because the indictment violated due process in that it did not allege the time and place of death. (R. at 547.) Tenth, Petitioner contended that counsel was ineffective for "not using prior records to adequately impeach [the] State's star witness." (R. at 547.)

In his eleventh allegation, Petitioner claims counsel was ineffective for not objecting "that a juror . . . withheld evidence" that "caused her to be struck from the panel." (R. at 547.) Twelfth, Petitioner contends counsel was ineffective for failing to subpoena an eyewitness whose "statement was beneficial." (R. at 547.) Thirteenth, Petitioner asserts that counsel was ineffective for not being present at Petitioner's preliminary hearing. (R. at 547.) Fourteenth, Petitioner claims counsel was ineffective for not objecting to the constructive amendment of the indictment. (R. at 547.)

4

In his fifteenth allegation, Petitioner claims counsel was ineffective for not admitting the original incident report. (R. at 548.) Sixteenth, Petitioner claims counsel was ineffective for not impeaching the State's primary witness with "reliable evidence that would have shown the witness had been promised a reduction in charges and lied about it." (R. at 548.) In his final ineffective assistance allegation, Petitioner stated,

> Applicant claims that prior to trial, counsel advised him that he did not have a chance of succeeding in the trial due to the fact that Applicant had previous dealings with the judge. And the last time they met the judge stated that next Applicant was to appear in front of him he would have no mercy. Applicant asked for a continuance but counsel refused.

(R. at 548.)

Petitioner also sought post-conviction relief on the grounds of prosecutorial misconduct. (See R. at 549.) According to Petitioner, his due process rights were violated by the constructive amendment of the indictment. (R. at 549.)

On February 18, 2009, Petitioner, through Attorney Regina Hollins Lewis, Esquire, filed a Supplemental Petition for Post Conviction Relief. (R. at 550-54.) In the supplemental petition, Petitioner contended trial counsel was ineffective for failing to object to the admission of the gun into evidence "despite the fact that a proper chain of custody was not established 'as far as practicable' by the State." (R. at 550.) Petitioner also asserted his appellate counsel was ineffective for the following:

> a. "[F]ail[ing] to allege that the out-of-court identification of Petitioner . . . by witness Delvin Dunham was unduly suggestive."
>
> b. "[F]ail[ing] to argue on appeal that the trial court abused its discretion in admitting into evidence a plastic bag for which the proper chain of custody was not established."
>
> c. "[F]ail[ing] to raise the issue on appeal that the trial court abused its discretion in admitting into evidence a gun obtained pursuant to a warrantless search of the area surrounding Petitioner's residence."

(R. at 551-52.)

An evidentiary hearing was held on October 26, 2009, before the Honorable R. Ferrell Cothran, Jr. (R. at 561-627.) Petitioner was present and represented by Regina H. Lewis, Esquire. (See R. at 561.) In an order dated December 22, 2009, Judge Cothran denied the application for post-conviction relief and dismissed the petition. (R. at 629-47.)

On January 7, 2010, Petitioner, thorough counsel, filed a Motion to Alter or Amend Judgment Pursuant to Rule 59(e). (See Dkt. No. 33-18.) In that motion, Petitioner asserted the court's Order "fail[ed] to sufficiently address the issue . . . regarding the search for and discovery of a gun on the petitioner's property." (Dkt. No. 33-18 at 1 of 4.) Petitioner also argued that the "court's order erroneously finds that counsel was effective in determining not to offer the video of the Petitioner's property where the gun was discovered when in fact there was no such video," as the "issue . . . raised at the hearing was with regard to a video of the area where the shooting occurred . . . ." (Dkt. No. 33-18 at 1-2 of 4.) Finally, Petitioner argued the court's order was "erroneous as it fails to address trial counsel's ineffectiveness in failing to sufficiently argue that the identification of the petitioner should be suppressed due to suggestiveness." (Id. at 2 of 4.)

In an order filed February 4, 2010, Judge Cothran denied the Motion to Alter or Amend. (Dkt. No. 33-20.)

While the first Motion to Alter or Amend was pending, Petitioner filed a Supplemental Motion to Alter or Amend Pursuant to Rule 59(e). (See R. at 648-49.) In the supplemental motion, Petitioner argued, through counsel, that the PCR judge's order failed "to sufficiently address the issue raised at the hearing regarding counsel's failure to raise the deficiency in the indictment." (R. at 648.) Petitioner also argued the PCR court failed "to sufficiently address the issue . . . regarding trial counsel's failure to appear and represent the defendant at the preliminary hearing." (R. at 648.)

In an order filed February 25, 2010, Judge Cothran denied the Motion to Alter or Amend. (Dkt. No. 33-22.)

On June 30, 2010, Robert M. Pachak, Esquire, of the South Carolina Commission on Indigent Defense, filed a <u>Johnson</u> Petition for Writ of Certiorari. (Dkt. No. 33-24.) Therein, Petitioner raised the following issue:

> Whether the trial court had subject matter jurisdiction to try petitioner for murder when the indictment did not allege the time and place of the assault upon the deceased and the time and place of the death of the deceased?

(Dkt. No. 33-24 at 3 of 7.) Counsel also filed a petition to be relieved as counsel. (<u>Id</u>. at 6 of 7.) Petitioner filed a *pro se* Response to the petition. (<u>See</u> Dkt. No. 35-3.) In his *pro se* Response, Petitioner raised the following issues:

> Trial counsel was ineffective for not requesting a lesser-included offense.
>
> Trial counsel was ineffective for not objecting to Petitioner having to appear in chains before members of the jury.
>
> Trial counsel was ineffective for omitting evidence. . . . Petitioner argues that this omitted evidence would have been used to rebut the testimony of the victim's eyewitness accounts of their visual of Petitioner.
>
> Trial counsel was ineffective for failing to investigate . . . . Petitioner argues that Petitioner notified counsel that shoe was not his and counsel failed to investigate to substantiate Petitioner's allegations. . . . Counsel also failed to investigate exactly where evidence was found to show that the questionable evidence was within curtilage . . . . making the warrantless search illegal. . . . Petitioner testified that due to counsel's procrastination, waiting until two days before trial to contact witness in favor of defense that witness was unavailable.
>
> Trial counsel was ineffective for erroneously advising Petitioner not to testify.
>
> Trial counsel was ineffective for not objecting to evidence that had not been preserved.
>
> Trial counsel was ineffective for failing to be present at preliminary hearing.
>
> Trial counsel was ineffective for not objecting to the identification process because it was unduly and highly suggestive[].
>
> Applicant argues that counsel was ineffective for not seeking a continuance or seeking recusal of the judge.

7

Appellate counsel failed to argue trial court abused its discretion in admitting evidence obtained pursuant to a warrantless search.

Appellate counsel was ineffective for not raising that trial court erroneously admitted evidence without proper chain of custody.

Appellate counsel was ineffective for not raising that trial court erroneously admitt[ed] contaminated evidence.

(Dkt. No. 35-3.)

In an order dated August 18, 2011, the Supreme Court of South Carolina entered an order denying the petition for writ of certiorari, and granting counsel's request to withdraw. (Dkt. No. 35-4.) The matter was remitted to the lower court on September 7, 2011. (Dkt. No. 35-5.)

On or about April 26, 2010, Petitioner filed a second application for post-conviction relief. (See Dkt. No. 35-6.) In that application, he contended PCR counsel was ineffective. (See Dkt. No. 35-6 at 3 of 7.) On or about June 22, 2010, Petitioner filed a third application for post-conviction relief. (See Dkt. No. 35-7.) In that application, he sought relief on the grounds of "newly discovered evidence–witness recantation of statement/testimony." (Dkt. No. 35-7 at 2 of 5.)

On or about April 7, 2011, the State filed a Motion for Merger, seeking to merge the second and third PCR applications. (See Dkt. No. 35-8.) In an order dated April 15, 2011, Judge Jeffrey Young granted the State's Motion for Merger. (See Dkt. No. 35-9.)

On August 9, 2011, Judge Jeffrey Young entered a Conditional Order of Dismissal for the second and third PCR applications. (See Dkt. No. 35-12.) After the Conditional Order of Dismissal was served upon Petitioner, (Dkt. No. 35-13), Petitioner filed a Notice of Appeal with the South Carolina Supreme Court. On November 7, 2011, the South Carolina Supreme Court dismissed the appeal because the conditional order was not an appealable order. (Dkt. No. 36-1.) The remittitur was issued on November 23, 2011. (Dkt. No. 36-2.)

In an order dated January 6, 2012, Judge Jeffery Young issued a Final Order of Dismissal. (See Dkt. No. 36-3.) The Final Order was served on Petitioner on January 17, 2012. (Dkt. No. 36-4.)

Petitioner appealed. (Dkt. No. 36-5.) In an order dated May 3, 2012, the Supreme Court of South Carolina dismissed the appeal. (Dkt. No. 36-9.) The remittitur was issued on May 31, 2012. (Dkt. No. 36-10.)

The Petitioner then filed the instant habeas action raising the following ground for review:

> **Ground One**: Counsel failed to Investigate.
> **Supporting Facts**: At trial Petitioner told trial counsel to take pictures of all my clothes and shoes because at trial arguments was a shoe was found on my property with a gun inside. It was testimony that shoe was mines. I told my lawyer that the shoe was not mines and it was co-defendants, and if trial counsel had of investigate he would of found out the shoe was not mines.
>
> **Ground Two**: Counsel failed to take pictures and sufficiently show my property, failed to investigate.
> **Supporting Facts**: At trial evidence was introduced that was siezed[sic] from my property without a search warrant. I told trial counsel to take pictures of my property and where evidence was found to show it was my property and well within the realms of curtilage. Instead counsel used a plat which was insufficient and could not possibly show where evidence was at on my property (See Exhibit Attached) 2A
>
> **Ground Three**: Trial counsel failed to subpoena alibi witness. Counsel was contacted and informed of Petitioners Alibi witnesses that could corroborate Petitioners story
> **Supporting Facts**: Before trial I notified trial counsel that I had several Alibi witness that could had corroborated my story Trial counsel failed to contact Alibi witness and failed to subpoena Alibi witness to testify.
>
> **Ground Four**: Trial counsel gave Petitioner erroneous advice by telling Petitioner not to testify so he could have last argument.
> **Supporting Facts**: Trial counsel told petitioner not to testify so he could obtain the last argument after Petitioner refused to testify Trial Counsel found out that he had lost the chance to obtain last argument in closing arguments. Petitioner's testimony <see attached> 1A.

**Ground Five**: Appellate Counsel failed to Raise on Direct Appeal that Trial Court Erroneously admitted evidence without a chain of custody.
**Supporting Facts**: Appellate Counsel failed to raise that Trial Court erroneously admitted evidence without a proper chain of custody Established. Trial Counsel objected to the admission of the evidence preserving the issue for appeal.

**Ground Six**: Trial Counsel failed to be Present at Preliminary Hearing.
**Supporting Facts**: Trial Counsel failed to be present at Preliminary Hearing. At Preliminary Hearing State presented no Witnesses or Evidence to Support Probable Cause. Also Detectives Statement at Preliminary Hearing Could have been used to impeach Detectives Statement at trial.

**Ground Seven**: Trial Counsel failed to Request a lesser-Included instruction.
**Supporting Facts**: Trial Counsel failed to Request a lesser-Included offense at trial. The State was unable to prove every element of Murder. Trial Counsel failed to Request that Manslaughter be given to the jury. Since the elements was not shown to substiante[sic] Murder.

**Ground Eight**: Appellate Counsel failed to raise on Appeal that Trial Court abused its discretion by admitting evidence that was siezed[sic] by means of a[sic] Illegal Search.
**Supporting Facts**: Appellate Counsel failed to raise an Appeal that Trial Court abused its discretion by erroneously ruling and admitting Evidence that was siezed[sic] by Illegal Search Trial Court used "Dunn" as the controlling case citing the open field Doctrine after Officer Wingate testified they search my property Twice and that the Evidence was found on Petitioner's property.

**Ground Nine**: (no Ground Nine)

**Ground Ten**: Trial Counsel was ineffective for not objecting to Photo Line-Up.
**Supporting Facts**: Trial Counsel failed to object to photo line-up. Before Trial Petitioner informed trial Counsel that witnesses saw Petitioner being escorted by Police officers into police station. There was no Identification of No Suspect until after witnesses <Courtney Williams + Delvin Dunham> saw petitioner at police station.

**Ground Eleven**: Counsel failed to object to Indictment.
**Supporting Facts**: Trial Counsel failed to object sufficiency of Indictment Before the Jury was sworn. Indictment failed to sufficiently state time and place of Death.

**Ground Twelve**: Trial Counsel was ineffective for not objecting to evidence that was not preserved and Appellate Counsel failed to Raise on Direct Appeal admissibility of Evidence that was not preserve and had not Chain Custody.

**Supporting Facts**: Trial Counsel failed to object to evidence that had not been preserved after Officer Wingate testified to destroying/contaminating evidence. Appellate Counsel failed to raise that trial counsel was ineffective for not objecting to the evidence, and Trial Court abused its discretion By admitting evidence that had not been Preserved and had no Chain of Custody.

**Ground Thirteen**: Trial Counsel failed to object Petitioner being in shackles during Trial.
**Supporting Facts**: During Trial Petitioner was shackles during the entire trial Trial Counsel failed to object to the inflammatory effect that the shackles would have on the jury.

**Ground Fourteen**: Trial Counsel failed to put in a Motion for Recusal of the judge.
**Supporting Facts**: Trial counsel reprensted[sic] Petitioner on previous charge in front of the Same Judge. At that Hearing Judge Newman threatened Petitioner stating that the Next time he (Judge Newman) saw Petitioner he would Drag the Skin off him.

**Ground Fifteen**: Trial Counsel failed to introduce Evidence.
**Supporting Facts**: Petitioner informed counsel to take pictures of the place were crime took place and crime scene to show that the witnesses "Courtney Williams + Delvin Dunham could not identify Petitioner. Trial Counsel Video Taped the area and crime scene, but withheld the Tape and didn't show it to the jury.

**Ground Sixteen**: Trial counsel failed to object to the Gun.
**Supporting Facts**: At trial there was testimony that Gun was found on petitioner's property pursuant to a warantless[sic] search, also Officer Wingate testified that he destroyed the fingerprints.

SECOND PETITION

**Ground One**:
**Supporting Facts**: Petitioner asserts that he told Trial Counsel that he had alibi witnesses that could testify to his whereabouts and corrobrate[sic] Petitioners story. Trial Counsel failed to contact alibi witness.

**Ground Two**:
**Supporting Facts**: Trial Counsel told petitioner not to testify so that he could have the last argument in the closing argument. After petitioner waived his right to testify, courts informed counsel that he could not have the last argument in the closing argument due to the fact he presented evidence.

**Ground Three**:
**Supporting Facts**: Petitioner informed counsel that when he was escorted to the Police station the witnesses saw him being escorted by officers in handcuffs then the next day witnesses ID petitioner in a photographic line-up. Trial Counsel did not object to photographic line-up on this Basis.

**Ground Four**:
**Supporting Facts**: Trial Court erroneously admitted evidence that was illegaly[sic] obtained by a warrantless Search. A Gun was found after Detective's search petitioner property with a metal Detector along with a Man Search. Detectives testified that two searches was conducted and that the Gun was found on My property. Appellate Counsel failed to raise this issue on Direct Appeal and Trial Counsel failed to properly argue the fact that Gun was on my property and introduced a insufficent[sic] platt to show jury the curtilage of petitioners' property.

**Ground Five**: Trial Counsel failed to Request that a lesser-included offense be given to the jury. The State failed to prove every element of Murder and there was no evidence of Murder towards the deceased.

**Ground Six**: Trial Counsel failed to object to the fact that Petitioner was in Shackles and chains during trial. Petitioner was forced to be in chains in front of the jury during Trial, and Counsel did not object.

**Ground Seven**: Trial Counsel failed to object to the indictment. The indictment failed to allege the time and death of the crime.

**Ground Eight**: Trial Counsel failed to be present at Preliminary hearing. At Preliminary hearing there was No Supporting Evidence to Substantiate Probable Cause.

**Ground Nine**: Trial Counsel withheld potentially exculpatory evidence. Petitioner told trial counsel to video tape crime scence[sic] to show that the visibility was poor and that there's No way the witnesses could identify the assistant due to the poor condition of visibility and no lighting. Trial Counsel took the video but didn't show it to the jury.

**Ground Ten**: Trial Counsel failed to investigate there was a shoe involved that petitioner supposedly hid the Gun in Petitioner told trial Counsel that Shoe was not his and told Trial Counsel to take pictures of all.

**Ground Eleven**: Appellate Counsel failed to Raise that trial Court erroneously admitted evidence without a proper chain of custody being established. At trial Counsel objected to evidence "Shoe bag + Gun" being admissible without a chain of custody.

**Ground Twelve**: Trial Counsel failed to file for Recusal Judge Being that Judge Newman threatened petitioner in a previous case in which Trial Counsel represented petitioner.

**Ground Thirteen**: Trial Counsel failed to object to evidence admissibility. At trial Officer Wingate testified that he had destroyed all evidence by handling the evidence with no gloves. All exculpatory value was destroyed and the evidence was admitted without objection.

**Ground Fourteen**: Trial Counsel failed to take pictures of the area where the evidence was found, instead showed a Plat that was insufficient to show where evidence was found at and/or curtilage.

**Ground Fifteen**: At trial on the Day of admission of the letters, My lawyer stated that he had no knowledge of Having the letters, then he stated he had received the letters early that Morning. Trial Counsel should of objected to the admission of the letters because they wasn't given to him in a timely fashion, and he had no time to prepare.

(Dkt. No. 1.)

## APPLICABLE LAW

### Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

13

**Habeas Standard of Review**

Since the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. <u>Lindh v. Murphy</u>, 521 U.S. 320, 322-23 (1997); <u>Breard v. Pruett</u>, 134 F.3d 615, 618 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Williams</u>, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 131 S.Ct. 770, 786 (2011) (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)).

## DISCUSSION

Respondent moved for summary judgment on all grounds. (<u>See</u> Dkt. No. 34; Dkt. No. 33; Dkt. No. 35; Dkt. No. 36.) The undersigned will address the grounds for relief in turn.

**A. Ground One in First Petition & Ground Ten in Second Petition**

Ground One in Collins' first petition and Ground Ten in his second petition are the same. The undersigned will therefore address these two grounds together.

In these grounds, Petitioner contends that his trial counsel was ineffective for failure to investigate because there was testimony at trial that "a shoe was found on [Petitioner's] property with a gun inside." (Dkt. No. 1.) Petitioner asserts that he told counsel that the shoe was not his but instead belonged to a co-defendant. (Id.) Petitioner contends that if trial counsel had investigated, "he would [have] found out the shoe was not [Petitioner's]." (Id.) Petitioner also asserts that he "told trial counsel to take pictures of all [Petitioner's] clothes and shoes." (Id.)

Although the PCR court addressed the claim that trial counsel was ineffective for failure to investigate, the PCR court did not address–other than noting Petitioner's testimony that counsel should have investigated the shoes–the specific claim Petitioner raises in the instant claim for relief. In addressing Petitioner's claim of ineffective assistance of counsel for failure to investigate, the PCR court stated,

> Applicant asserts that Counsel failed to adequately investigate. Applicant testified that he met with his attorney twice. Applicant stated that Counsel failed to investigate witnesses who could provide an alibi defense, his father Jack Hanna, Dot Hanna, and Michelle Taylor. Applicant further argued that Counsel should have taken photos of the area where the gun was found in order to argue that a search warrant was required to search the area. Applicant asserts that Counsel should have done investigation into his shoes to determine whether the shoe in which the gun was found belonged to him. Applicant further argued that Counsel should have retained a handwriting expert with regard to the letters. Applicant recalled that Counsel had hired an investigator.
>
> Counsel testified that he met with Applicant numerous times. With regard to the issue of alibi, Counsel stated that he could not put up testimony that he knew to be false. Counsel stated that Applicant had admitted his involvement. Counsel had procured plats of the property where the gun was found and offered testimony from Applicant's mother in support of his motion to suppress the evidence. Counsel had visited the area himself during his investigation. Counsel had a video of the area but did not feel that the video would have been useful at trial. Counsel had reviewed the statements of the witnesses and other discovery material. Counsel conducted a thorough cross-examination of the witnesses.
>
> I find Counsel's testimony to be credible in this regard. Based on the circumstances of this case, I find that Counsel's investigation was within reasonable professional norms. Due to Applicant's statements to his attorney,

Counsel had no reason to investigate and develop an alibi defense. Counsel had procured a plat and witness with regard to his motion to suppress the gun. Counsel was prepared for trial. Furthermore, Applicant has failed to demonstrate prejudice in this regard. Applicant has produced no additional evidence which additional investigation could have yielded. See Moorehead v. State, 329 S.C. 329, 496 S.E.2d 415 (1998) (no prejudice where claim of failure to investigate is supported only by mere speculation as to the result). Applicant produced no testimony from additional witnesses which would support an alibi defense. Applicant has made no showing that additional evidence would have affected the trial court's ruling on his motion to suppress the gun. Applicant has submitted no additional expert testimony from a handwriting expert. Dempsey v. State, 363 S.C. 365, 610 S.E.2d 812 (2005) (any prejudice suffered by failure to call expert witness merely speculative where expert witness does not testify at PCR hearing). Applicant has failed to demonstrate that additional consultation or other investigation would have changed the outcome of the trial.

(R. at 636-37.)

Strickland v. Washington, 466 U.S. 668 (1984), states that a meritorious ineffective assistance of counsel claim must demonstrate two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. Id. at 687–96. A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance. Id. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id. (internal quotation marks and citation omitted); see also Bowie v. Branker, 512 F.3d 112, 119 n.8 (4th Cir. 2008); Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297–99 (4th Cir. 1992); Roach v. Martin, 757 F.2d 1463, 1467 (4th Cir. 1985). In order to establish the second prong of Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." Id. While

16

Strickland itself is a deferential standard, when both § 2254(d) and Strickland apply, "review is doubly" deferential. Harrington v. Richter, 131 S.Ct. 770, 788 (2011). Indeed, when § 2254(d) applies, "[t]he question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 131 S.Ct. at 788.

Respondent contends he is entitled to summary judgment on this ground for relief because, *inter alia*, "[a]s noted by the PCR Court, Petitioner presented no additional evidence that could have been found had counsel conducted his investigation as Petitioner asserts." (Dkt. No. 33 at 46-47.) The undersigned has reviewed the transcript of the PCR proceeding, and Respondent is correct. Although Petitioner complained about counsel's failure to investigate, Petitioner did not present any evidence that additional investigation could have yielded. Petitioner is therefore not entitled to habeas relief on this claim. See Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990) (concluding the petitioner's claim that other evidence should have been presented during the sentencing phase of his trial failed in "the absence of a proffer of testimony from a witness or witnesses he claims his attorney should have called," stating, "He claims that his counsel conducted an inadequate investigation to discover persons who would testify in his favor, but he does not advise us of what an adequate investigation would have revealed or what these witnesses might have said, if they had been called to testify."); see also Davis v. Cohen, No. 6:09-3328-RMG-KFM, 2010 WL 5138483, at *12 (D.S.C. Nov. 15, 2010), adopted at 2010 WL 5141343 (D.S.C. Dec. 8, 2010); Gay v. Padula, 3:07-cv-4006-CMC-JRM, 2008 WL 4280380, at *8 (D.S.C. Sept. 10, 2008).

## B. Ground Two in First Petition & Grounds Four and Fourteen in Second Petition

In Ground Two of his first petition, Collins asserts his trial counsel was ineffective for failing to "take pictures of [Petitioner's] property" to show that seized evidence was "well within the realms of curtilage." (Dkt. No. 1.) Petitioner states, "Instead counsel used a plat

17

which was insufficient and could not possibly show where evidence was at on my property." (Id.) Petitioner makes a similar argument in Ground Four of his second petition; he contends the "[t]rial court erroneously admitted evidence . . . obtained by a warrantless search." (Dkt. No. 1.) Petitioner complains that appellate counsel failed to raise the issue on appeal and that trial counsel "failed to properly argue the fact that the gun was on [his] property and introduced a[n] insufficient plat[] to show the jury the curtilage of Petitioner's property." (Id.) Finally, in Ground Fourteen of the second petition, Petitioner asserts that trial counsel was ineffective because counsel "failed to take pictures of the area where the evidence was found" and "instead showed a plat that was insufficient to show where evidence was found at/or curtilage." (Id.)

To the extent Petitioner argues, in Ground Four of his second petition, that the trial court erred in admitting evidence, the Supreme Court has held "that where the State has provided an opportunity for a full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." Stone v. Powell, 428 U.S. 465 (1976). At trial, Petitioner's counsel moved to suppress the gun; he contended the gun should be suppressed because the police did not obtain a warrant and the gun was found within a "wooded area [that] is part of the residence." (See R. at 13-14, 70-75.) At the hearing, Officer Wingate testified that he found the shoe in a wooded area behind a house. (R. at 54.) Wingate further testified that there was approximately fifty feet between the house and the wooded area, and the tennis shoe with the gun inside was approximately ten to fifteen feet inside the wooded area. (R. at 56.) Petitioner's counsel used a plat when questioning Officer Wingate, and counsel asked Officer Wingate to mark where he found the tennis shoe with the gun. (R. at 59.) Defense counsel also called Petitioner's mother to testify at the hearing on the motion to suppress.

18

(See R. at 63.) She testified that the "x" marked on the plat was on her property, that Petitioner lived with her on the property, and that the area was previously used as a walkway. (R. at 65-66.) She testified that the area was "not an abandoned area." (R. at 68.) After taking a brief recess, the trial judge denied the motion to suppress, finding the issue was controlled by the open field doctrine. (R. at 76.) The trial judge found the tennis shoe and gun to have been located outside the curtilage of the home, in an area with no reasonable expectation of privacy. (R. at 77.)

Petitioner is not entitled to habeas relief on his claim that the trial court erred in admitting the tennis shoe or gun. Petitioner's Fourth Amendment claim was considered by the trial court and rejected. In addition, Petitioner raised the issue in his *pro se* response to the Anders brief, (Dkt. No. 33-11 at 4 of 10), but the South Carolina Court of Appeals dismissed Petitioner's appeal. (Dkt. No. 33-14.) A review of the record reveals that Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim; as such, the claim is barred from federal habeas review. See Stone, 428 U.S. 465; see also Grimsley v. Dodson, 696 F.2d 303, 304 (4th Cir.1982) (finding Stone v. Powell applicable when petitioner "had an opportunity to litigate the introduction of the evidence at his probation revocation hearing" because "he vigorously sought its suppression," the trial court ruled against him, and the trial court's ruling was affirmed on appeal); Bailey v. Bazzle, 628 F. Supp. 2d 651, 657 (D.S.C. 2008).

In Ground Two of his first petition and Ground Fourteen of his second petition, Collins contends that trial counsel was ineffective for failing to "take pictures of [Petitioner's] property" to show that seized evidence was "well within the realms of curtilage." (Dkt. No. 1.) Petitioner asserts that counsel should have taken pictures of the area to show where the evidence was found, instead of "show[ing] a plat that was insufficient to show" the evidence was found in the curtilage. (Id.)

In addressing this claim, the PCR court found "that Counsel's investigation was within reasonable professional norms," noting that trial counsel "had procured a plat and witness with regard to his motion to suppress the gun." (R. at 637.) The PCR court also found that Petitioner failed to demonstrate prejudice because he "produced no additional evidence which additional investigation could have yielded." (Id.) The PCR court stated, "Applicant has made no showing that additional evidence would have affected the trial court's ruling on his motion to suppress the gun." (Id.)

Petitioner is not entitled to federal habeas relief on his claim in Ground Two of his first petition or his claim in Ground Fourteen of his second petition. Petitioner's trial counsel had a strategy to seek suppression of the gun; as noted by the PCR court, counsel presented testimony as well as a plat to support his argument that the gun was found within the curtilage of the house. The trial court simply ruled against Petitioner; this ruling does not mean counsel was ineffective. See Hill v. White, No. CV-10-1339-PHX-PGR (LOA), 2011 WL 1641889, at *15 (D. Ariz. Apr. 4, 2011), adopted at 2011 WL 1641864 (D. Ariz. May 2, 2011) ("Here, counsel challenged the wiretap evidence and moved to suppress that evidence. The trial court's denial of that motion does not render counsel's assistance deficient."); Cutler v. Hill, No. 07-0193-MA, 2009 WL 523101, at *6 (D. Or. Mar. 2, 2009) ("Reasonable tactical decisions, even though not successful, do not form the basis of ineffective assistance."). Furthermore, as noted by the PCR court, Petitioner failed to establish prejudice, as Petitioner did not present any photographs at the PCR hearing to show that the additional evidence would have affected the trial court's ruling on the motion to suppress. See Bassette, 915 F.2d at 940-41. Petitioner has not shown the PCR court's determination was contrary to, or an unreasonable application of, clearly established federal law; nor has Petitioner shown the decision was based on an unreasonable determination

20

of the facts. Petitioner is therefore not entitled to habeas relief on Ground Two of his first petition, Ground Four of his second petition, or Ground Fourteen of his second petition.

**C. Ground Three in First Petition and Ground One in Second Petition**

In this claim for relief, Petitioner contends trial counsel was ineffective for failing to subpoena alibi witnesses. (Dkt. No. 1.) According to Petitioner, he notified trial counsel prior to trial that he had "several alibi witnesses" that could "corroborate [Petitioner's] story," but counsel "failed to contact alibi witnesses and failed to subpoena alibi witnesses to testify." (Id.)

The PCR court addressed this claim under the heading "Failure to Investigate." (See R. at 636-38.) The PCR court noted Petitioner's testimony that "Counsel failed to investigate witnesses who could provide an alibi defense, his father Jack Hanna, Dot Hanna, and Michelle Taylor." (R. at 636.) The PCR court then noted counsel's testimony that "he could not put up testimony that he knew to be false," as "[c]ounsel stated that Applicant had admitted his involvement." (R. at 636.) The PCR court "f[ound] Counsel's testimony to be credible in this regard" and stated, "Due to Applicant's statements to his attorney, Counsel had no reason to investigate and develop an alibi defense." (R. at 637.) The PCR court further found that Petitioner failed to establish prejudice, as "Applicant produced no testimony from additional witnesses which would support an alibi defense." (R. at 637.)

Petitioner has not shown the PCR court's meets the standard set forth in § 2254. The PCR court's finding on credibility is "presumed to be correct"; Petitioner has the "burden of rebutting the presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Wilson v. Ozmint, 352 F.3d 847, 858 (4th Cir. 2003). Petitioner has not done so. Also, as noted by the PCR court, none of the witnesses that Petitioner asserts could provide him with an alibi testified at the PCR hearing. Petitioner has not shown that the PCR court's

rejection of this ineffective assistance of counsel claim meets the standard set forth in § 2254, as Petitioner failed to establish prejudice. See Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."). In opposing Respondent's Motion for Summary Judgment, Petitioner cites Martinez v. Ryan, 132 S. Ct. 1309 (2012), and asserts that he asked PCR counsel to subpoena his alibi witnesses, but she told Petitioner it was not necessary. (Dkt. No. 45 at 5 of 47.) However, Martinez does not assist Petitioner, as the claim he raises is not procedurally barred; the undersigned has considered the claim on the merits. See Martinez, 132 S. Ct. at 1315 ("Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's **procedural default** of a claim of ineffective assistance at trial." (emphasis added)); see also Fielder v. Stevenson, No. 2:12-cv-00412-JMC, 2013 WL 593657, at *5 (D.S.C. Feb. 14, 2013); Williams v. Mitchell, No. 1:09CV2246, 2012 WL 4505181, at *5-6 (N.D. Ohio Sept. 28, 2012). Respondent is therefore entitled to summary judgment on these grounds for relief.

**D. Ground Four in First Petition and Ground Two in Second Petition**

In these grounds for relief, Petitioner contends that trial counsel was ineffective for giving Petitioner "erroneous advice . . . not to testify" so Petitioner "could have the last argument." (Dkt. No. 1.) Petitioner states, "Trial counsel told petitioner not to testify so that he could have the last argument in the closing argument." (Id.) Petitioner asserts that, after he waived his right to testify, the court "informed counsel that he could not have the last argument in the closing . . . due to the fact that he presented evidence." (Id.)

The PCR court addressed this claim as follows:

Applicant argues that Counsel's advice that he should not testify constitutes ineffective assistance of counsel. Applicant testified that Counsel had advised him not to testify so that the defense could have the last argument to the jury. Though the defense put up no witnesses at trial, the

defense had introduced items of evidence at trial (e.g. photograph of the Escape showing dark tinted windows during cross-examination of witness who claimed to have seen Applicant in the Escape). The trial transcript reflects that the trial court informed Applicant of his right to testify. (Tr. p. 446-448.) The trial court explained that the decision to testify was Applicant's decision, and Applicant indicated that he did not wish to testify.

If a defendant introduces evidence, he loses reply closing argument. At PCR hearing, Counsel conceded that he had erred in advising Applicant that the defense would lose reply closing argument if Applicant testified. However, Counsel testified that he and Applicant had discussed various "pros and cons" of Applicant taking the stand. Counsel was concerned that Applicant's prior record would come in. Counsel also expressed concern that he could not put Applicant on the stand knowing that certain things he would say would be false. Counsel testified that Applicant had admitted his guilt in their conversations; therefore, Counsel could not abide Applicant taking the stand to present an alibi. See Rule 407, SCACR; See also Lucas v. State, 352 S.C. 1, 572 S.E.2d 274 (2002).

I find Counsel's testimony to be credible. While Counsel's advice regarding the closing argument was incorrect, other factors were considered in Counsel's recommendation that Applicant not take the stand. Further, the trial court explained to Applicant his right to testify, and Applicant's decision not to testify was made freely and voluntarily. While Counsel shared his advice, it was Applicant who ultimately made the decision not to testify. Given the other factors involved in the decision, I find Counsel's advice to be reasonable.

Moreover, I find that Applicant has failed to demonstrate prejudice in this regard. Applicant proffered no testimony at PCR hearing that would have altered the outcome of trial. There was strong evidence of guilt in this case. Applicant and Prescott were identified by two passengers in the victim's car. Prescott testified that Applicant was the shooter. The events related by the passengers and Prescott were supported by other witnesses who had seen Applicant before and after the shooting. The weapon was recovered on Applicant's property. At PCR hearing, Applicant stated that he would maintain his innocence and inform the jury that he had been home on the evening in question. A criminal defendant denies guilt by pleading not guilty to the charges against him. In the present case, Applicant's additional denial of guilt could have been accompanied by admission of prior convictions. Counsel was also prohibited by the Rules of Professional Conduct from offering evidence he reasonably believed to be false. For these reasons, Applicant has failed to demonstrate that his testimony would have affected the outcome of the trial.

(R. at 639-40.)

The Fourth Circuit has held that "the advice provided by a criminal defense lawyer on whether his clients should testify is 'a paradigm of the type of tactical decision that

cannot be challenged as evidence of ineffective assistance.' " Carter v. Lee, 283 F.3d 240, 249 (4th Cir.2002) (quoting Hutchins v. Garrison, 724 F.2d 1425, 1436 (4th Cir.1983). In some circumstances, where defendants have clearly acceded to trial counsel's advice but trial counsel was later found to have misinformed defendants with respect to the consequences of taking the stand, courts have found ineffective assistance of counsel. See, e.g., Blackburn v. Foltz, 828 F.2d 1177, 1182 (6th Cir.1987) (holding that defendant was deprived of meaningful opportunity to decide whether to testify where counsel misinformed defendant about the Government's use of prior convictions if defendant took the stand); Foster v. Delo, 11 F.3d 1451, 1457-58 (8th Cir.1993) (finding counsel provided ineffective assistance regarding the petitioner's right to testify at the punishment phase of his case because the petitioner "had nothing to lose and everything to gain by testifying at the penalty phase," since his guilt had already been established, and "[h]is only chance to escape the death penalty required a plea for his own life, asking the jury for mercy, portraying himself as a human being").

In the instant case, the PCR court found that, although counsel's advice "regarding the closing argument was incorrect, other factors were considered in Counsel's recommendation that Applicant not take the stand." (R. at 640.) The PCR court also concluded that, because of the other factors involved in the decision, counsel's advice not to testify was "reasonable." (Id.) Finally, in light of the "strong evidence of guilt," the PCR court concluded that Petitioner "failed to demonstrate that his testimony would have affected the outcome of the trial." (R. at 640.)

The PCR court's determination was not contrary to, or an unreasonable application of, clearly established federal law. Nor was it an unreasonable determination of the facts. Counsel testified at the PCR hearing that he and Petitioner discussed the "good side" of

Petitioner testifying as well as the "bad side" of Petitioner testifying. (R. at 602.) The following exchange also occurred during counsel's testimony:

> Q. Okay. And did he tell you his version of an alibi defense? Did he tell you what he would testify to?
>
> A. We discussed it. But I guess the best way for me to explain it is that I could not put Robbie on the stand and ask him a question that I knew was a lie and have him answer it.

(R. at 611.) The PCR court specifically found that "other factors were considered in Counsel's recommendation" that Petitioner not take the stand. (R. at 640.) This factual finding is entitled to deference pursuant to 28 U.S.C. § 2254(e)(1); Petitioner has not rebutted the "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Furthermore, the PCR court's analysis is not contrary to, or an unreasonable application of, clearly established federal law. See Cain v. Sec'y, Fla. Dep't of Corr., 266 Fed. App'x 854 (11th Cir. 2008) (concluding the petitioner was not entitled to relief pursuant to § 2254 even when counsel gave erroneous advice to petitioner that by not testifying, petitioner would have the right to present the concluding argument to the jury because, *inter alia*, petitioner had not shown the state court's application of the Strickland prejudice prong was objectively unreasonable: "the potential effect of [the petitioner's] purported testimony should . . . be evaluated in light of the State's other evidence"); Barrow v. Uchtman, 398 F.3d 597, 608 (7th Cir. 2005) ("Here, it is clear that Barrow elected not to testify based on his lawyer's admittedly mistaken legal advice. However, as discussed above, it also seems clear that Barrow's claims regarding counsel's failure to call him as a witness do not entitle him to relief, even under *de novo* review.") The undersigned therefore recommends granting summary judgment to Respondent on Ground Four in the first petition and Ground Two in the second petition.

**E. Ground Five in First Petition and Ground Eleven in Second Petition**

In these grounds for relief, Petitioner contends that appellate counsel was ineffective for failing "to raise on direct appeal that [the] trial court erroneously admitted evidence without a chain of custody." (Dkt. No. 1.) Petitioner states, "Appellate counsel failed to raise that trial court erroneously admitted evidence without a proper chain of custody being established. At trial counsel objected to evidence 'shoe bag + gun' being admissible without a chain of custody." (Id.)

The PCR court addressed claims slightly differently from what Petitioner raises herein; the PCR court addressed the following two claims: (1) that trial counsel was ineffective for failing to object to admission of the gun because the State failed to establish an adequate chain of custody, and (2) that appellate counsel was ineffective for failing to challenge the admission of the plastic bag. (R. at 637-38, 645.) Trial counsel did object at trial to the admission of the bag; he argued the chain of custody was defective. (R. at 258-59.) The trial judge allowed the plastic bag to be admitted over defense counsel's objection. (R. at 259.)

The PCR court addressed appellate counsel's failure to challenge the admission of the plastic bag on appeal as follows:

> Applicant next agues that appellate counsel should have challenged the admission of a plastic bag found with the gun on direct appeal. Counsel objected to the admission of the plastic bag based on the chain of custody. (Tr. pp. 258-259.) The plastic bag was admitted into evidence over Counsel's objection. Appellate counsel submitted an <u>Anders</u> brief, and the entire record was reviewed. <u>State v. McKennedy</u>, <u>supra</u>. The appellate court did not order additional briefing and dismissed the appeal. Therefore, I find no error by appellate counsel in this regard. This court also notes that the plastic bag was only significant in that the gun was wrapped in it when found. Therefore, any error in the admission of the plastic bag would likely be harmless.

(R. at 645.) The PCR court also addressed trial counsel's failure to challenge the admission of the gun on the basis of improper chain of custody. (R. at 637-38.) The PCR court noted

that, since a "gun is non-fungible evidence," there was "no error in Counsel's failure to object to the admission of the gun on the basis of the chain of custody." (R. at 638.)

To the extent Petitioner contends that appellate counsel was ineffective for failing to challenge the admission of the gun on alleged defective chain of custody, that claim fails. Appellate counsel cannot be deemed ineffective for failing to raise an issue that was not preserved for appellate review. Under South Carolina law, any chain of custody issue with respect to the gun was waived on appeal because trial counsel did not object on this basis. See Cogdill v. Watson, 289 S.C. 531, 537, 347 S.E.2d 126, 130 (Ct. App. 1986) ("The failure to make an objection at the time evidence is offered constitutes a waiver of the right to object."). Accordingly, any appeal on that ground would be meritless, and appellate counsel cannot be deemed ineffective for failing to raise a meritless issue. See Thai v. Mapes, 412 F.3d 970, 979 (8th Cir. 2005) ("Because the promise of leniency argument was factually meritless, his counsel was not ineffective for failing to make this argument . . . ."); Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) ("Under Florida law, an error that passed without objection cannot be raised on appeal; appellate counsel, therefore, is not ineffective for failure to raise a meritless argument."); Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir.2000) ("counsel cannot be ineffective for failing to raise a meritless claim").

As noted above, the PCR court did address Petitioner's claim that appellate counsel was ineffective for failing to raise the chain of custody issue with respect to the plastic bag. (See R. at 645.) Although appellate counsel did not raise the issue in the Anders brief, Petitioner did raise the issue in his *pro se* response to the Anders brief. (See Dkt. No. 33-11 at 9-10 of 10.) The PCR court found, *inter alia*, that Petitioner suffered no prejudice as a result of appellate counsel's failure to raise the issue because the entire record was reviewed pursuant to Anders. (See R. at 645.) In Richardson v. South Carolina, No. 3:09-

27

1107-MBS, 2010 WL 1346420 (D.S.C. Mar. 31, 2010), Judge Seymour addressed a similar issue:

> It is true that Petitioner's appellate counsel failed to raise this issue in her *Anders* brief. However, Petitioner has failed to show that he was prejudiced by his appellate counsel's failure to do so. The South Carolina Court of Appeals was obligated under *Anders* to conduct a full review of the record on its own to determine whether there were any meritorious issues on appeal. See Anders v. California, 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967). Moreover, Petitioner raised this very issue in his pro se brief on direct appeal, and his pro se brief was part of the record that the South Carolina Court of Appeals considered when it denied Petitioner's appeal on the merits.

Richardson, 2010 WL 1346420, at *13. Petitioner has not shown that the PCR court's rejection of his claim of ineffective assistance of appellate counsel was contrary to, or an unreasonable application of, clearly established federal law. Nor has Petitioner shown the PCR court's decision was based on an unreasonable determination of the facts. The undersigned therefore recommends granting summary judgment to Respondent on Ground Five in the first petition and Ground Eleven in the second petition.

**F. Ground Six in First Petition and Ground Eight in Second Petition**

In these claims for relief, Petitioner contends trial counsel was ineffective for failing to be present at Petitioner's preliminary hearing. Petitioner asserts that the State presented "no witnesses or evidence to support probable cause." (Dkt. No. 1.) Petitioner further states (verbatim), "Also detectives statement at preliminary hearing could have been used to impeach detectives statement at trial." (Id.)

Although the PCR court did not originally address this issue in its order of dismissal, the issue is addressed in Judge Cothran's order filed February 25, 2010. (See Dkt. No. 33-22.) That order states, *inter alia*,

> With regard to the preliminary hearing, . . . Applicant failed to carry his burden of showing deficient performance and prejudice therefrom. At PCR hearing, Applicant testified that counsel should have appeared at a preliminary hearing. Applicant testified that counsel could have tried to argue

28

there was no probable cause due to a lack of evidence. Upon review of the trial record and the evidence presented at PCR hearing, I find that Applicant failed to carry his burden of demonstrating deficient performance by counsel or prejudice resulting therefrom.

(Dkt. No. 33-22 at 2 of 3.)

Petitioner cannot show the PCR court's determination of this issue was contrary to, or an unreasonable application of, clearly established federal law, or that the decision was based on an unreasonable determination of the facts. To the extent Petitioner contends that, had counsel been present at the preliminary hearing, he would have obtained impeachment evidence, that claim must be rejected. Petitioner did not present any of this alleged impeachment evidence at his PCR hearing. Petitioner failed to establish prejudice, and his habeas claim also fails. See Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."); see also Rieb v. Stevenson, No. 1:09-2642-RMG-SVH, 2010 WL 3893759, at *13 (D.S.C. Aug. 4, 2010), adopted at 2010 WL 3855194 (Sept. 29, 2010) (no habeas relief on allegation that trial counsel failed to impeach a key witness because, inter alia, the petitioner " never introduced a copy of the supposedly inconsistent statement or the alleged prior conviction, which prevents him from showing prejudice on the ground alleged").

To the extent Petitioner contends trial counsel was ineffective for failing to appear at the preliminary hearing because "counsel could have tried to argue there was no probable cause due to a lack of evidence," that claim must be rejected as well. As stated in State v. Keenan, 278 S.C. 361, 365, 296 S.E.2d 676, 678 (1982), "There no longer exists a State (nor has there ever existed a Federal) constitutional right to a preliminary hearing." Furthermore, in South Carolina, a preliminary hearing is not held if the defendant is indicted by the grand jury or waives presentment before the preliminary hearing can be held. See S.C. R. Crim. P. 2(b). In the instant case, Petitioner was indicted by a grand jury, and

later convicted after a jury trial. Accordingly, Petitioner's claim that counsel was ineffective for failing to attend the preliminary hearing because "counsel could have tried there was no probable cause" fails. See United States v. Kabat, 586 F.2d 325, 328 (4th Cir. 1978) ("[U]nder the Supreme Court's decision in Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), an accused has no constitutional right to a preliminary hearing, so long as he receives some form of 'a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest.'"); United States v. Soriano-Jarquin, 492 F.3d 594, (4th Cir. 2007) ("[T]he defendant's indictment mooted any questions surrounding the preliminary hearing. This court has long held that the probable cause requirement may be satisfied either by a preliminary hearing or by indictment by a grand jury. (citing United States v. Mackey, 474 F.2d 55, 56-57 (4th Cir.1973))); see also Rhyne v. Warden of Tyger River Corr. Inst., No. 4:07-3147-HMH-TER, 2008 WL 1930040, at *10 (D.S.C. Apr. 29, 2008). The undersigned therefore recommends granting summary judgment to Respondent on Ground Six in the first petition and Ground Eight in the second petition.

## G. Ground Seven in First Petition and Ground Five in Second Petition

In these grounds for relief, Petitioner contends that trial counsel was ineffective for failing to request "that a lesser-included offense be given to the jury." (Dkt. No. 1.) Petitioner asserts that the State was "unable to prove every element of murder," but counsel "failed to request that manslaughter be given to the jury." (Id.)

The PCR court addressed this claim as follows:

> Applicant asserts that Counsel should have requested a jury charge on the lesser-included offense of voluntary manslaughter. Voluntary manslaughter requires that the act occur "in the heat of passion upon sufficient legal provocation." Counsel testified that the defense theory of the case was that Applicant was not at the scene of the crime. Therefore, such a request would not be consistent with the defense theory of the case. Counsel rationalized that to argue voluntary manslaughter to the jury, he would have to concede that Applicant was present. Counsel testified that there had been a plea offer to voluntary manslaughter made and he had advised Applicant to consider the plea.

Counsel's decision not to request a jury charge on voluntary manslaughter was not unreasonable under these circumstances. Counsel articulated a reasonable explanation for his decision. Moreover, even if the charge were requested, there would be no evidence to support such a charge. There was no evidence that the shooting was based on any legal provocation. If the jury believed that Applicant was the shooter, murder was the appropriate charge. "[W]here there is no evidence to support a finding that the defendant was guilty of the lesser offense, there can be no error in the failure to charge the lesser offense." State v. Gadsden, 314 S.C. 229, 232, 442 S.E.2d 594, 597 (1994). Therefore, Applicant has also failed to demonstrate any prejudice in this regard.

(R. at 638-39.)

Petitioner is not entitled to relief on Ground Seven in his first petition or on Ground Five in his second petition. Voluntary manslaughter is the unlawful killing of a human being in sudden heat of passion upon sufficient legal provocation. State v. Locklair, 341 S.C. 352, 535 S.E.2d 420, 424 (2000) (quoting State v. Johnson, 333 S.C. 62, 508 S.E.2d 29 (S.C.1998)). At the PCR hearing, counsel articulated the defense theory of the case was that Petitioner was not present at the crime scene. (R. at 600.) Counsel stated, "There is no lesser included offense if you didn't do it." (R. at 600.) Where counsel articulates valid reasons for employing a certain strategy, such conduct is not ineffective assistance of counsel. See Daniels v. Lee, 316 F.3d 477, 491 (4th Cir. 2003); LeSane v. Lafler, No. 08-12828, 2011 WL 4634252, at *8 (E.D. Mich. Oct. 6, 2011) ("[I]t was reasonable strategy for defense counsel not to request a jury instruction on voluntary manslaughter, because the petitioner's defense was that he was not present when the victims were shot."); Davis v. Shearin, No. AW-08-3453, 2010 WL 2595864, at *12 (D. Md. June 24, 2010) (no habeas relief on alleged ineffective assistance of counsel for failure to request voluntary manslaughter charge where the defense theory "was that he did not commit the crime and that multiple people can attest to his absence from the scene of the crime"). Furthermore, the PCR court concluded that, pursuant to South Carolina law, there was no evidence to support a voluntary manslaughter instruction. "[I]t is not the province of a federal habeas

31

court to reexamine state-court determinations on state-law questions." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). Because Petitioner was not entitled to a jury instruction on voluntary manslaughter as a matter of state law, counsel was not deficient in failing to request the charge. <u>See Clinkscales v. Stevenson</u>, No. 6:11-1160-TMC-KFM, 2012 WL 1030345, at *11 (D.S.C. Jan. 12, 2012), adopted at 2012 WL 1030256 (D.S.C. Mar. 27, 2012). Petitioner has not shown that the PCR court's rejection of this claim meets the standard set forth in § 2254. The undersigned therefore recommends granting summary judgment to Respondent on Ground Seven in the first petition and Ground Five in the second petition.

**H. Ground Eight in First Petition**

In Ground Eight of his first petition, Petitioner contends that appellate counsel was ineffective for failing to argue on appeal that the trial court erred in "admitting evidence that was seized by means of an illegal search." (Dkt. No. 1.) The PCR court addressed this claim as follows:

> Applicant further asserts that appellate counsel should have challenged the trial court's denial of his motion to suppress the gun. Counsel moved to suppress the gun on the basis that it was obtained without a search warrant. (Tr. pp. 51-77.) Reviewing the evidence submitted, the trial court found that the area in which the gun was found was outside the curtilage of the home. <u>See</u> 68 Am. Jur. 2d Searches and Seizures § 67 (2009). Appellate counsel submitted an <u>Anders</u> brief, and the entire record was reviewed. <u>State v. McKennedy</u>, <u>supra</u>. The appellate court did not order additional briefing and dismissed the appeal. Therefore, I find no error by appellate counsel in this regard.

(R. at 645-46.)

Although appellate counsel did not raise the issue in the <u>Anders</u> brief, Petitioner did raise the issue in his *pro se* response to the <u>Anders</u> brief. (<u>See</u> Dkt. No. 33-11 at 7 of 10.) As the PCR court noted, under the <u>Anders</u> procedure, the appellate court, after reviewing the entire record, may deny counsel's request to be relieved and instruct counsel to brief any issue that it deems meritorious. <u>State v. McKennedy</u>, 348 S.C. 270, 279, 559 S.E.2d

32

850, 855 (2002). The PCR court found no error by appellate counsel because the appellate court did not order additional briefing and dismissed the appeal. (R. at 646.) Even assuming appellate counsel was deficient in failing to challenge the search on appeal, Petitioner did not demonstrate any prejudice. See Richardson, 2010 WL 1346420; see also Saccato v. Wilson, 510 Fed. App'x 693, 697 (10th Cir. 2013) ("Even if we were to assume, without deciding, that his counsel on direct appeal misapplied the Anders standard, the Wyoming Supreme Court, nonetheless, went to the merits of Saccato's issues regarding sentencing and found them to be without merit."); Jackson v. Eagleton, No. 6:08-599-TLW-WMC, 2009 WL 799650, at *11 (D.S.C. Mar. 23, 2009). Petitioner therefore fails to show that the PCR court's rejection of this claim meets the standard set forth in § 2254. The undersigned recommends granting summary judgment to Respondent on Ground Eight.

### I. Ground Ten in First Petition and Ground Three in Second Petition[3]

In these grounds for relief, Petitioner asserts that his trial counsel was ineffective for failing to object to the photo lineup. (Dkt. No. 1.) According to Petitioner, he informed counsel before trial "that witnesses saw Petitioner being escorted by police officers into police station." (Id.) Petitioner contends that the two witnesses, Courtney Williams and Devlin Duham, did not identify him as the perpetrator until after they saw him in the police station. (Id.)

The PCR court's original order did not address this claim of ineffective assistance of counsel. Petitioner's PCR counsel did file a Motion to Alter or Amend contending that the PCR court's order failed to address counsel's performance with respect to suppression of identification testimony by Delvin Dunham. In an order filed February 4, 2010, Judge Cothran denied the Motion to Alter or Amend. (See Dkt. No. 33-20.) The order, however, does not specifically address this claim.

―――――――――――――――

[3]There is no Ground Nine in the first petition.

The undersigned recommends granting Respondent's Motion for Summary Judgment on Ground Ten in the first petition and Ground Three in the second petition. In reviewing the record, it appears that counsel moved to suppress the in court identifications by Delvin Dunham and Courtney Williams. (See R. at 49-50.) The trial court denied that motion, finding "by the preponderance of the evidence that there is no showing of any unduly suggestiveness in the identification process." (R. at 49-50.) At the PCR hearing, the following exchange occurred during trial counsel's testimony:

> Q. Okay. Did you–have you heard Mr. Collins talk about the suggestiveness of the line-up. Did you ever talk with Mr. Collins–did you recall having conversations with Mr. Collins with regard to his identification?
>
> A. I remember having statements with him. But if I remember right, Mr. Collins and a number of people located at a club or old closed club near his house where all the individuals were located at one time, so the individuals saw Mr. Collins prior to the incident happening.
> Where–what happened was Mr. Collins and a number of people was at a spot where there was some drug dealing going on. These people got into a car and drove off. And it was alleged that Mr. Collins along with his co-defendants was given a gun and told to go rob these guys and that they got into a car and followed them.
> So these people saw Mr. Collins and stuff prior to going there. So seeing Mr. Collins at the–at the police station some days later was not the first time they ever seen Mr. Collins.
>
> Q. Okay.
>
> A. So then the line-up was not an issue at that time.

(R. at 599-600.)

As explained in United States v. Greene, 704 F.3d 298 (4th Cir. 2013),

> The Supreme Court has established a two-step process to determine whether identification testimony is admissible. See Manson v. Brathwaite, 432 U.S. 98, 110, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Satcher v. Pruett, 126 F.3d 561, 566 (4th Cir.1997). "First, the court must consider whether the identification procedure is unnecessarily suggestive." Satcher, 126 F.3d at 566. "Second, if the procedure was unnecessarily suggestive, a court must look at several factors to determine if the identification testimony is nevertheless reliable under the totality of the circumstances." Id. Those

34

factors were set out by the Supreme Court in <u>Neil v. Biggers</u>, 409 U.S. 188, 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

<u>Greene</u>, 704 F.3d at 305. The Court in <u>Neil v. Biggers</u> listed the following factors in assessing "whether under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive":

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

<u>Neil</u>, 409 U.S. at 199-200.

In the instant case, the trial court denied the motion to suppress the identifications, finding "there is no showing of any unduly suggestiveness in the identification process." (R. at 50.) The trial judge also stated,

> The witnesses have clearly established that they had an opportunity to see the defendant. They are certain of the identification of the defendant. And that there was no undue pressure placed upon them to identify the defendant.

(R. at 50-51.) Of course, the trial judge did not have any evidence before him to suggest that the witnesses saw Petitioner in the police station before they identified him. However, even assuming the identification procedure was suggestive, Petitioner's claim of ineffective assistance of counsel fails because Petitioner fails to show prejudice.

As a preliminary matter, the undersigned notes that, based on the <u>Neil v. Biggers</u> factors, it is unclear that the identifications by Ms. Williams and Mr. Dunham would have been suppressed, even if the trial court did have before it Petitioner's allegation that the witnesses saw him at the police station before the identification; several factors support allowing the identification even if Petitioner's allegations are true. The identification took place either the day after the shooting or the following day. And as counsel indicated, both Delvin Dunham and Courtney Williams testified that they saw Petitioner, prior to the shooting, at the abandoned club. (R. at 19-20, 37.) Ms. Williams testified that she got a

"good look" at Petitioner at the club and saw Petitioner get into the car with Jumal Prescott. (R. at 19-20.) She also testified that she saw Petitioner lean out of the car Prescott was driving before Petitioner shot at the vehicle in which she was riding. (R. at 22.) She was able to identify the Petitioner as the perpetrator in court. (R. at 19-20.) She picked Petitioner out of the lineup as the shooter, and she picked Jumal Prescott out of a lineup as the driver of the vehicle. (R. at 23-24.) The solicitor also asked her, "Anybody try to ask you to make up anything, or show you pictures ahead of time to try to mess up your mind on picking these people out?" (R. at 24.) She said, "No, sir." (R. at 25.) When asked if she saw any other pictures of Petitioner before the at-issue lineup, she said no. (R. at 27.)

> Mr. Dunham testified that he saw Petitioner at the club; Dunham stated,
>
> And then the Collins boy walked up behind me. And I thought he was trying to come up behind me, you know, on some, I thought he was trying to sneak up or something like that, so I watched him the whole time. . . .
>
> . . . .
>
> Q. Is the man that did that to you here in this courtroom today?
>
> A. Yes, sir.
>
> Q. Where is he?
>
> A. Right there.
>
> Q. Right there?
>
> A. Yes, sir.
>
> Q. Let the record reflect, your honor, he pointed to Robbie Collins the defendant. How close did y'all get?
>
> A. He was behind me. I would say about this far apart. I thought he was trying to hit me or sneak me, something like that.
>
> Q. Would that be about 3 feet? I'm not trying to tell you what to say, but is that. . .
>
> A. It was probably about 2 feet behind me, or 3 feet behind me possibly.

Q. Did you get a good look at him?

A. Yes, I looked directly in his face. That was my first time seeing him, but I looked, I remember faces.

(R. at 37-38.) Dunham also indicated there were plenty of lights on when he saw Petitioner at the club. (R. at 38.) Dunham testified that he saw Petitioner "put his face out the window" and shoot the victim. (R. at 42-43.) Dunham was also able to identify Petitioner as the shooter in court. (R. at 43.) Like Williams, Duham picked Prescott out of a lineup as the driver of the vehicle. (R. at 43-45.)

Perhaps most importantly, however, Petitioner cannot show he was prejudiced by counsel's alleged deficiency because, as Respondent notes, there was "overwhelming" evidence of Petitioner's guilt, notwithstanding the identifications made by Ms. Williams and Mr. Dunham. Dunham testified that, at the abandoned club, he saw Petitioner with Tieron Parks. (R. at 37.) Tieron Parks testified that he saw Petitioner at the club and also identified Petitioner in the courtroom as the person he saw at the club. (R. at 179.) Parks testified that he saw Petitioner the day after the murder, and Petitioner said he (Petitioner) "should have killed Boomer [(Jumal Prescott)] last night" because "Boomer snitched" on him. (R. at 184.) Antwan Myers testified that on the night of the murder, he sold a pistol to Petitioner. (R. at 327.) Later that night, after receiving a phone call, Myers testified that he picked up Prescott and Petitioner approximately a half mile from the scene of the crime after they had run out of gas. (R. at 329-30.) Myers stated that when he picked them up, Prescott "kept telling [Petitioner] you're crazy, man. You're crazy. I didn't know you was like that, you're crazy." (R. at 331.) Myers testified that Petitioner said, "I know I hit somebody. I shot in the car while I was driving by. I know I hit somebody." (R. at 331.) Myers further testified that Petitioner stated "he should have [taken] Boomer out too." (R. at 334.) At trial, Jumal Prescott testified that after a failed drug deal between Dunham and Parks, Petitioner stated he was going to rob Dunham. (R. at 361-62.) Prescott testified that while he was driving, Petitioner rolled

37

down the window and shot twice into the car driven by the victim. (R. at 364.) Prescott testified that he then drove the vehicle into a field, and that Petitioner called Myers asking for a ride, saying they had run out of gas. (R. at 366.) Prescott also testified that, once Myers picked them up, and they found out someone had died, Petitioner "said he knew he hit somebody." (R. at 366-67.) On all of this evidence, Petitioner cannot show that he was prejudiced by counsel's failure to object because Ms. Williams and Mr. Dunham "saw Petitioner being escorted by police officers into [the] police station." (Dkt. No. 1.) See Strickland, 466 U.S. at 700 (finding no prejudice in light of "overwhelming aggravating factors"); Correll v. Thompson, 63 F.3d 1279, 1291 (4th Cir.1995) (holding that admission of confession, if error, was harmless because evidence against defendant was overwhelming); see also Harrington, 131 S. Ct. at 791-92 ("In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. Instead, Strickland asks whether it is "reasonably likely" the result would have been different." (citations omitted)). The undersigned therefore recommends granting summary judgment to Respondent on Ground Ten in the first petition and Ground Three in the second petition.

**J. Ground Eleven in First Petition and Ground Seven in Second Petition**

In these grounds for relief, Petitioner contends his trial counsel was ineffective for failing to object to the indictment. (Dkt. No. 1.) Petitioner contends his trial counsel should have objected to the indictment before the jury was sworn because it "failed to sufficiently state time and place of death." (Dkt. No. 1.)

Although the PCR court did not address this claim in its original order, this issue was addressed in Judge Cothran's order filed February 25, 2010. (Dkt. No. 33-22.) In rejecting this claim, Judge Cothran said,

With regard to the indictment, (issue #1) the indictment is a notice document. State v. Gentry, 363 S.C. 93, 610 S.E.2d 494 (2005). Defects in the indictment do not affect the subject matter jurisdiction of this court. Applicant's argument that the indictment was deficient because it did not list the time of the victim's death and the place of the victim's death is without merit. The evidence presented at PCR hearing clearly demonstrates that the defense had notice of the charge. Applicant testified that he attempted to develop an alibi defense before trial, so Applicant was clearly aware of the date and time the crime was alleged to have occurred. I find that counsel was not deficient in challenging the indictment for failing to state the time of death and place of death of the victim. Moreover, assuming *arguendo* that such a challenge was made successfully, the solicitor could re-indict. For all these reasons, I find that this allegation should be denied and dismissed with prejudice.

(Dkt. No. 33-22 at 1-2 of 3.)

The PCR court's rejection of this claim does not meet the standard set forth in §

2254. With respect to the murder count, the at issue indictment provided as follows:

That ROBBIE COLLINS, ANTWON MYERS, AND JUMAL PRESCOTT did in Lee County on or about August 23, 2004, violate Section 16-3-10 of the Code of Laws of South Carolina (1976), as amended, in that they did feloniously, willfully and with malice aforethought, kill one DESHAUN HAMMONDS by means of shooting him, and that the said DESHAUN HAMMONDS did die as a proximate result thereof.

(R. at 511.) The South Carolina Supreme Court rejected a claim similar to Petitioner's in

Winns v. State, 363 S.C. 414, 611 S.E.2d 901 (2005). In Winns, the South Carolina

Supreme Court held that the PCR judge "erred in ruling that the trial court lacked subject

matter jurisdiction because the indictment failed to state the time and place of the victim's

death." Winns, 363 S.C. at 418, 611 S.E.2d at 903. That indictment provided,

That HERMAN WINNS did in Berkeley County on or about October 4, 1997 while at apartment # 5 at Belangia Apartments in the town of St. Stephen, South Carolina, with malice aforethought, strike John Arthur Mouzon several times in the head with a metal object, said blows to the head being the proximate cause of the death of John Arthur Mouzon. This action being in violation of § 16-3-10, South Carolina Code of Law (1976), as amended.

Winns, 363 S.C. at 419, 611 S.E.2d at 903. The South Carolina Supreme Court stated,

We hold that the PCR court erred in finding the indictment defective. Although the indictment did not state that Mouzon did "then and there" die, the only

logical reading of the indictment is that on October 4, 1997, Winns hit Mouzon in the head several times, at the Belangia Apartments, and Mouzon died either at the time he was attacked or soon thereafter. The indictment provides the time of death (October 4, 1997) and the place of death (the Belangia Apartments, St. Stephens, South Carolina). Had the victim been found in a different location or on a different date, the indictment, as written, may have been insufficient. But because Mouzon was found dead in his bed, on the same day and in the same place where Winns struck him, and because the indictment explained that the blows to the head were the "proximate cause of death," we find that the indictment states the offense of murder with sufficient certainty and particularity such that Winns knew what he was being called upon to answer. Accordingly, the indictment was not defective.

Winns, 363 S.C. at 419-20, 611 S.E.2d at 903-04. Much like the indictment at issue in Winns, although Petitioner's indictment does not say that Hammonds did "then and there die," the only logical reading of the indictment is that on August 23, 2004, Petitioner shot the victim, in Lee County, and Hammonds died either at the time he was shot or soon thereafter. As in Winns, the indictment provides a time of death (August 23, 2004) and place of death (Lee County, South Carolina).[4]

The PCR court's conclusion that Petitioner suffered no prejudice as a result of counsel's failure to object to the indictment is not contrary to, or an unreasonable application of, clearly established federal law, nor is it an unreasonable determination of the facts. The PCR court found, as a fact, that Petitioner was "clearly aware of the date and time the crime was alleged to have occurred." (Dkt. No. 33-22 at 2 of 3.) That factual finding is "presumed to be correct"; Petitioner has the "burden of rebutting the presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Wilson v. Ozmint, 352 F.3d 847, 858 (4th Cir. 2003). Petitioner has not done so. Furthermore, as noted by the PCR court, under

---

[4]In one of his Responses, Petitioner makes a slightly different argument; he complains that the indictment did not specify that the victim died "within a year and a day of the infliction of the wound." (Dkt. No. 45 at 27 of 46.) The indictment was true-billed on August 11, 2005. (R. at 512.) The indictment lists the incident as occurring on August 23, 2004. (R. at 511.) Clearly the death did occur within one year and a day. However, the court in Winns found an indictment nearly identical to Petitioner's indictment was not defective. See Winns, 363 S.C. 414, 611 S.E.2d 901.

South Carolina law, an indictment is simply a notice document. <u>State v. Gentry</u>, 363 S.C. 93, 610 S.E.2d 494 (2005). Petitioner suffered no prejudice as a result of counsel's failure to object. <u>See Winns</u>, 363 S.C. 414, 611 S.E.2d 901; <u>see also Jones v. State</u>, 333 S.C. 6, 8, 507 S.E.2d 324, 326 (1998) ("As to the place the crime was committed, the statute requires only that it be sufficiently alleged so as to lay the jurisdiction of the court and inform the accused of the county in which he is charged with a violation of the law. . . . Here, the facts alleged in the indictment assert the offenses were committed in Beaufort County. This is sufficient to satisfy the requirements of the law and confer jurisdiction upon the court in that county . . . ."); <u>Williams v. Scott</u>, 55 F.3d 632, 1995 WL 313943, at *2 (5th Cir. May 3, 1995) (unpublished) (stating, in rejecting ineffective assistance claim, "We stated that the wording of the indictments was sufficient to provide Williams with notice of the essential elements of the charges against him, including intent. Accordingly, Williams was not prejudiced by his attorney's failure to object to the indictments."); <u>Clinkscales v. Stevenson</u>, No. 6:11-1160-TMC-KFM, 2012 WL 1030345, at *12 (D.S.C. Jan. 12, 2012), adopted at 2012 WL 1030256 (D.S.C. Mar. 27, 2012). Respondent is entitled to summary judgment on Ground Eleven in the first petition and Ground Seven in the second petition.

## K.    Ground Twelve in First Petition and Ground Thirteen in Second Petition

In these grounds for relief, Petitioner asserts that his trial counsel was ineffective "for not objecting to evidence that was not preserved." (Dkt. No. 1.) Petitioner states, "Trial counsel failed to object to evidence that had not been preserved after Officer Wingate testified to destroying/contaminating evidence." (<u>Id</u>.) Petitioner complains that trial counsel failed to object "to evidence admissibility" after Wingate "testified that he had destroyed all evidence by handling the evidence with no gloves." (<u>Id</u>.) Petitioner asserts the trial court "abused its discretion by admitting evidence that had not been preserved and had no chain

of custody." (Id.) Petitioner also complains that appellate counsel was ineffective for failing to raise these issues on direct appeal. (Id.)[5]

It is not entirely clear from reading the petition exactly what evidence Petitioner contends trial counsel should have objected to for not being preserved. The contention in this habeas petition appears based on the following portion of Wingate's testimony:

> Q. Okay. Is it possible that SLED could have gotten, if there were fingerprints on the bag or the shoe, that possibly SLED could have gotten fingerprints or latents off the bag and shoe?
>
> A. It would have been contaminated from where I opened up the bag.
>
> Q. Okay. But any possible evidence was basically contaminated by you if you opened up the bag.
>
> A. Yes, sir.

(R. at 264.) The PCR court did not address–either in its original order or two orders on the Motions to Alter or Amend–any allegation that counsel was ineffective for failing to object to evidence because it was not "preserved." The contention is therefore not preserved for federal habeas review. See Montgomery v. Bodison, C.A. No. 6:09-778-HMH-WMC, 2010 WL 297667, at *4 (D.S.C. Jan 20, 2010) (although petitioner raised some claims in his petition, they were procedurally barred because the PCR court did not rule on them, and petitioner did not file a Rule 59(e) motion); Miller v. Padula, C.A. No. 2:07-3149-PMD, 2008 WL 1826495, at *10 (D.S.C. Apr. 23, 2008) (concluding the petitioner's claim that counsel was ineffective for failing to challenge the lack of timely action on the arrest warrant was not

---

[5]Petitioner's claim that appellate counsel was ineffective for failing to challenge admission of the gun and admission of the plastic bag is addressed above in Section E. Furthermore, to the extent Petitioner asserts appellate counsel was ineffective in failing to raise preservation issues on appeal, appellate counsel cannot be deemed ineffective for failing to raise an issue that was not preserved for appeal. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) ("Under Florida law, an error that passed without objection cannot be raised on appeal; appellate counsel, therefore, is not ineffective for failure to raise a meritless argument."); Cogdill v. Watson, 289 S.C. 531, 537, 347 S.E.2d 126, 130 (Ct. App. 1986).

properly exhausted because the claim was not raised during the PCR hearing, and "[a]n issue not ruled upon by the PCR judge is not preserved for review on appeal," and the petitioner's "attempt to raise the new issue in his post-trial motion was insufficient to preserve the issue for appeal").

In one of his Responses, Petitioner cited Martinez v. Ryan, 132 S. Ct. 1309 (2012), and contended that "PCR counsel was the cause for the procedural default." (Dkt. No. 55-1 at 1 of 4.) Despite Petitioner's citation to Martinez, the undersigned concludes that Petitioner has not shown cause and prejudice for the default. The undersigned notes that trial counsel highlighted on Wingate's cross-examination that Wingate had no evidence that Petitioner had possession of the gun. (R. at 263.) Counsel also highlighted that no effort was made to locate the other tennis shoe. (R. at 265.) Counsel thoroughly cross-examined Wingate on Wingate's failure to use plastic gloves. (R. at 269-72.) Finally, counsel asked Wingate: "So you have no other evidence or anything to indicate that Robbie Collins had anything to do with this, do you?" (R. at 268.) Wingate answered, "No, sir, I do not." (Id.) Petitioner has not shown the underlying ineffective assistance claim is "substantial." Martinez, 132 S. Ct. at 1318. Although counsel did not object to the evidence as not being preserved, counsel highlighted all the shortcomings of the evidence.

To the extent he argues counsel was ineffective for failing to object to the evidence due to a defective chain of custody, the undersigned notes that trial counsel did object to admission of the plastic bag on those grounds. When the solicitor attempted to admit the plastic bag into evidence during Investigator Brooks' testimony, trial counsel objected, stating that the evidence had not been preserved and there was no chain of custody. (R. at 250.) The trial judge sustained the objection. (R. at 250.) The solicitor again attempted to admit the plastic bag into evidence, this time during Officer Wingate's testimony. (R. at 258.) Trial counsel again objected, asserting there was no chain of custody. (R. at 258-59.)

43

The trial court allowed the plastic bag into evidence over trial counsel's objection. (R. at 259-60.) Counsel cannot be deemed ineffective for failing to object when he did, in fact, object. He was simply overruled.

Furthermore, at the PCR hearing, counsel stated that he did not object to admission of the gun on the basis of a defective chain of custody because the gun was non-fungible evidence. The PCR court ruled that, as a matter of state law, "[a] gun is non-fungible evidence, and the court may, in its discretion, admit the item upon testimony that it is in unchanged condition." (R. at 638.) The PCR court found no error in counsel's failure to object to the gun on the basis of chain of custody. (Id.) This conclusion of the PCR court is not contrary to, or an unreasonable application of, clearly established federal law. Wingate testified that the serial number on the gun introduced at trial matched the serial number of the gun recovered in the woods. (R. at 256.) As the PCR court concluded, Petitioner has failed to establish prejudice. See Cowans v. Bagley, 639 F.3d 241, 252 (6th Cir.2011) (rejecting petitioner's claim that trial counsel should have challenged whether the evidence remained in the police's chain of custody because, inter alia, the claim "falters on the prejudice prong of Strickland" where the petitioner "has not provided any evidence ... that raises a question about whether the palm print in fact ever left the State's custody"); Pryor v. Norris, 103 F.3d 710, 713-14 (8th Cir.1997) (defendant failed to establish prejudice from counsel's failure to object to chain of custody because she failed to show objection would have been sustained or that prosecution would not have established complete chain of custody if objection had been made); cf. United States v. Douglas, 964 F.2d 738, 742 (8th Cir. 1992) (district court did not abuse its discretion in admitting the handgun into evidence where the serial number of the gun found at the scene matched the serial number of the gun introduced at trial).

For the reasons set forth above, Petitioner is not entitled to habeas relief on his ineffective assistance claims set forth in Ground Twelve in the first petition and in Ground Thirteen of the second petition. Furthermore, to the extent Petitioner complains that the trial court erred in admitting evidence, Petitioner is not entitled to relief. See Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law."); see also Spencer v. Murray, 5 F.3d 758, 762 (4th Cir. 1993). The undersigned recommends granting summary judgment to Respondent on these claims.

**L.     Ground Thirteen in First Petition and Ground Six in Second Petition**

In these grounds, Petitioner contends trial counsel was ineffective for failing to object to the "inflammatory effect" of the Petitioner being in "shackles and chains during trial." (Dkt. No. 1.) The PCR court addressed this claim as follows:

> Applicant further alleges that counsel should have objected to the Applicant being placed in shackles during jury trial. Applicant claims that the jury could have seen the shackles he was wearing and the fact that the shackles made noise when he was moving. Counsel recalled that Applicant was in leg shackles and that he tried to ensure that Applicant's legs were covered. Counsel further recalled that Applicant was seated while in the presence of the jury so that the restraints would not be visible or audible. Counsel stated that he did raise the issue off the record. There is no evidence that Applicant appeared in prison clothing.
> A criminal defendant's restraints during the trial are in the discretion of the trial judge. "The trial judge is to balance the prejudicial effect of shackling with the considerations of courtroom decorum and security." State v. Tucker, 320 S.C. 206, 209, 404 S.E.2d 105, 107 (1995). Measures to minimize the prejudicial effect of shackles include ensuring that the shackles are not visible to the jury and assuring that the defendant is seated at the defense table or on the stand prior to the jury entering or exiting the courtroom. Id. I find Counsel's testimony to be credible. Given that measures were taken in the present case to ensure that the shackles were not visible or audible and that Counsel did inquire as to whether shackles could be removed, I find that counsel's performance was not deficient in this regard.
> Further, Applicant must still demonstrate prejudice to establish a claim of ineffective assistance of counsel. Strickland v. Washington, supra. See also Humbert v. State, 345 S.C. 332, 548 S.E.2d 862 (2001) (prejudice not presumed where applicant proceeded to trial in readily identifiable prison clothing); Foye v. State, 335 S.C. 586, 518 S.E.2d 265 (1999) (applicant failed to demonstrate prejudice where no evidence that members of seated jury saw

him in chains). Given the weight of the evidence, the possibility that shackles may have been visible at some point did not affect the outcome of the trial.

(R. at 641-42.)

The PCR court found trial counsel's testimony–that counsel inquired about removing the shackles off the record and took measures to insure the shackles were not visible or audible during trial–to be credible. This factual finding on credibility is "presumed to be correct"; Petitioner has the "burden of rebutting the presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Wilson v. Ozmint, 352 F.3d 847, 858 (4th Cir. 2003). Petitioner has not done so. See Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 2008) ("[F]or a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear."); Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000) ("Fisher has not shown that the state court findings are unreasonable, unsupported, or otherwise erroneous. Indeed, they are supported by competent evidence."); Haynes v. Warden of McCormick Corr. Inst., No. 2:09-1377-JFA-RSC, 2010 WL 503098, at *5 (D.S.C. Feb. 8, 2010) (finding a claim of ineffective assistance to be without merit where the "PCR judge's findings are well supported by the record and petitioner fails to show by clear and convincing evidence that the PCR court made an unreasonable determination of the facts . . . "); cf. Wilson v. Ozmint, 352 F.3d 847, 860 (4th Cir. 2003) ("These facts do not compel the credibility determination reached by the state court, but they certainly provide sufficient basis, for purposes of section 2254(d)(2), to support such a determination."). Petitioner has not shown the PCR court's determination of this claim meets the standard set forth in § 2254; the undersigned therefore recommends granting summary judgment to Respondent on Ground Thirteen in the first petition and Ground Six in the second petition.

**M.    Ground Fourteen in First Petition and Ground Twelve in Second Petition**

Petitioner asserts in these grounds that trial counsel was ineffective for failing to move to recuse Petitioner's trial judge, Judge Newman. Petitioner contends such motion should have been made because Petitioner had previously appeared before that judge, and "[a]t that hearing Judge Newman threatened Petitioner stating that the next time he (Judge Newman) saw Petitioner he would drag the skin off him." (Dkt. No. 1.)

The PCR court addressed this claim:

> Applicant asserts that Counsel should have sought a continuance or sought to recuse the trial judge because Applicant had appeared before him on a previous occasion. Counsel testified that he represented Applicant on the previous offense where Applicant appeared before Judge Newman. Counsel testified that Applicant had pled guilty to Reckless Homicide and was sentenced by Judge Newman to home detention. Applicant was arrested on the present charges only months later. Counsel noted that Applicant's sentence in the present case was not surprising under the circumstances of the crime and his previous record. Counsel felt that Judge Newman had been fair in his rulings. Counsel added that any incorrect rulings would have been addressed on appeal, and following an Anders review no error was found.
>
> I find that Counsel's determination that there were no grounds for recusal to be reasonable. I further find that Applicant has failed to demonstrate proof of bias or prejudice requiring recusal of the trial judge. "A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including instances where he has a personal bias or prejudice against a party. It is not sufficient for a party seeking disqualification to simpy allege bias; rather, the party must show some evidence of bias or prejudice." Koon v. Fares, 379 S.C. 150, 156, 666 S.E.2d 230, 234 (2008). A trial judge is not required to recuse himself on the basis that a criminal defendant has appeared before him or has been sentenced by him on previous occasions. State v. Cabiness, 273 S.C. 56, 254 S.E.2d 291 (1979). For these reasons, I find that Applicant has failed to carry his burden of demonstrating ineffective assistance of counsel in this regard.

(R. at 640-41.)

Petitioner is not entitled to habeas relief on these claims. Counsel testified at the PCR hearing that he believed Judge Newman was fair in his rulings; counsel also testified that Judge Newman's sentence "was based on [Petitioner] having just got out of homicide, but I mean, any judge could have possibly given Robbie the sentence he got." (R. at 604.)

The PCR court also found that Petitioner failed to demonstrate proof of bias or prejudice requiring recusal of the trial judge. The PCR court's rejection of this claim of ineffective assistance of counsel is not contrary to, or an unreasonable application of, clearly established federal law, nor did it result in an unreasonable determination of the facts. Petitioner is not entitled to habeas relief on this claim. See Baldwin v. Johnson, 152 F.3d 1304, 1317 (11th Cir. 1998); Wright v. Bazzle, No. 9:07-2881-PMD, 2008 WL 1923141, at *10-11 (D.S.C. Apr. 29, 2008) (no habeas relief on claim of ineffective assistance of counsel for failure to request recusal of the judge where, *inter alia*, "[t]here is no showing by Petitioner in this record that he was treated unfairly"); Mendez v. Quarterman, 625 F. Supp. 2d 415, 428 (S.D. Tex. 2009) (stating, in rejecting claim of ineffective assistance for failure to request recusal of the trial judge, "Because Mendez has not shown that his counsel failed to file a meritorious motion that would have changed the result of his trial, he fails to demonstrate that the state court's decision to reject his ineffective assistance claim was incorrect or unreasonable."). Petitioner contended in one of his Responses that Judge Newman denied all of his motions. (Dkt. No. 45 at 38 of 47.) Petitioner's contention is not true; he overlooks the fact that, at the conclusion of the evidence, Judge Newman granted Mr. Johnson's Motion for a Directed Verdict as to the conspiracy to commit murder charge and struck the charge of unlawful possession of a pistol. (R. at 444-45.) Petitioner has not shown that he is entitled to habeas relief on these grounds.

**N.    Ground Fifteen in First Petition and Ground Nine in Second Petition**

In Ground Fifteen in his first petition and Ground Nine in his second petition, Petitioner contends that trial counsel was ineffective for failing to introduce evidence. Specifically, Petitioner asserts that trial counsel was ineffective because "Petitioner informed counsel to take pictures of the place [where the] crime took place and crime scene to show that the witnesses . . . could not identify Petitioner." (Dkt. No. 1.) Petitioner complains that

48

trial counsel video taped the area and crime scene "but withheld the tape and didn't show it to the jury." (Dkt. No. 1.) In one of the orders denying Petitioner's Motion to Alter or Amend, the PCR court stated,

> Having carefully reviewed the entire record in this matter, this Court amends its ruling to clarify that the video Applicant refers to is purportedly a video of the crime scene. In so amending, this Court further clarifies its finding that Applicant has failed to demonstrate deficient performance or prejudice. Counsel testified as to why he did not introduce the video, and Counsel cross-examined witnesses regarding the lighting and other conditions affecting the accuracy of an identification. Counsel's performance was not unreasonable in this regard. Applicant did not introduce the video at the PCR hearing. Therefore, any value it may have had is merely speculative. See Moorehead v. State, 329 S.C. 329, 496 S.E.2d 415 (1998) (no prejudice where claim of failure to investigate is supported only by mere speculation as to the result).

(R. at 654-55.)

Petitioner has not shown the PCR court's rejection of this claim meets the standard set forth in § 2254. Here, counsel testified that he did not introduce the video at trial because he "didn't think that it served any purpose." (R. at 607.) And, as the PCR court noted, counsel extensively cross-examined Delvin Dunham and Courtney Williams on their ability to identify and observe the shooter. (R. at 124-25, 127-28, 131-36, 144, 163, 171-73.) In fact, Ms. Williams admitted on cross-examination that she did not see Petitioner shoot anyone. (R. at 173.) As the PCR court concluded, Petitioner has not shown prejudice; counsel cross-examined the witnesses and, in any event, Petitioner did not introduce the video at the PCR hearing. See Bassette, 915 F.2d at 940-41 (4th Cir. 1990). Petitioner is not entitled to relief on these grounds.

## O.    Ground Sixteen in First Petition

Petitioner asserts that trial counsel was ineffective for failing to object to the gun. (Dkt. No. 1.) Petitioner complains that the gun was found on his property after a warrantless search and that "Officer Wingate testified that he destroyed the fingerprints." (Dkt. No. 1.)

49

The PCR court addressed Petitioner's contention that counsel was ineffective for failing to object to the gun on the basis of a defective chain of custody. (R. at 637-38.) Although the PCR court order did not address Petitioner's contention that counsel was ineffective for failing to object to admission of the gun because it was found on his property after a warrantless search, Petitioner did file a Motion to Alter or Amend on that basis. (Dkt. No. 33-20.) The PCR court denied that motion but did not elaborate in the rejection of this claim of ineffective assistance of counsel.

Petitioner is not entitled to relief on Ground Sixteen. Trial counsel objected to the admission of the gun; in fact he sought to suppress the gun. (R. at 13-14, 70-75.) This claim of ineffective assistance was addressed in Section B and Section K, supra. Respondent is entitled to summary judgment on Ground Sixteen of the first petition.

**P.     Ground Fifteen in Second Petition**

In Ground Fifteen of the second petition, Petitioner contends trial counsel was ineffective for failing to object to the admission of letters. (Dkt. No. 1.) Petitioner states,

> At trial on the day of admission of the letters, my lawyer stated that he had no knowledge of having the letters, then he stated he had received the letters early that morning. Trial counsel should have objected to the admission of the letters because they [were not] given to him in a timely fashion, and he had not time to prepare.

(Dkt. No. 1.)

It does not appear that the PCR court ruled on the exact issue presented in the instant habeas petition. The PCR court did address Petitioner's claim that trial counsel was ineffective for failing to retain a handwriting expert with respect to the letters. (R. at 635.) On that claim, the PCR court found that Petitioner failed to establish prejudice because he did not submit testimony from a handwriting expert at his PCR hearing. (R. at 636.) To the extent Petitioner raises a claim herein that was not raised to and ruled upon by the PCR court, that claim is barred. In one of his Responses, Petitioner cited Martinez v. Ryan, 132

S. Ct. 1309 (2012), and contended that "PCR counsel was the cause for the procedural default." (Dkt. No. 55-1 at 1 of 4.) Despite Petitioner's citation to <u>Martinez</u>, the undersigned concludes that Petitioner has not shown cause and prejudice for the default. Petitioner's underlying ineffective assistance claim is not a substantial one. <u>Martinez</u>, 132 S. Ct. at 1318. Petitioner asserts that trial counsel should have objected to admission of the letters because he had "no knowledge . . . of the letters." (Dkt. No. 1.) From a review of the record, trial counsel did object, stating that he had not seen the letter before. (R. at 371.) Shortly thereafter, counsel stated that he received the letter in question on Monday. (R. at 371-72.) When asked whether he "had an objection or not," counsel stated,

> Well, your honor, my objection still stands. My client states to me that it is not his handwriting. And I ask that an evidentiary hearing be held before we present this to the jury to determine if it is his handwriting or not.

(R. at 372.) Counsel asked for an evidentiary hearing to determine if the handwriting was Petitioner's handwriting. (R. at 372.) The court held such a hearing, where Jumal Prescott testified that Petitioner personally delivered one of the letters to him. (R. at 382.) Counsel sought exclusion of all the letters because, *inter alia*, "[t]here is no way that the State is able to verify that that is Robbie Collins' handwriting." (R. at 384-85.) The trial judge overruled the objection. (R. at 386-89.) In short, counsel attempted to keep these letters out of evidence; Petitioner has not shown that counsel's performance was deficient.

To the extent Petitioner contends that trial counsel was ineffective for failing to retain a handwriting expert, Petitioner has not shown the PCR court's rejection of that claim meets the standard in § 2254. As the PCR court noted, Petitioner did not produce any evidence from a handwriting expert at his PCR hearing. Petitioner is not entitled to habeas relief on Ground Fifteen of the second petition. <u>See Bassette</u>, 915 F.2d at 940-41 (4th Cir. 1990).

## CONCLUSION

It is therefore RECOMMENDED, for the foregoing reasons, Respondent's Motion for Summary Judgment (Dkt. No. 34) be GRANTED; and the Petitioner's habeas petition be DISMISSED WITH PREJUDICE. It is further RECOMMENDED that a certificate of appealability be DENIED.[6]

IT IS SO RECOMMENDED.


s/Bruce Howe Hendricks
United States Magistrate Judge

July 29, 2013
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

---

[6]     Title 28, Section 2253 provides in relevant part,
(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
(B) the final order in a proceeding under section 2255.
28 U.S.C. § 2253. A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. See Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683 (4th Cir. 2001). In the case *sub judice*, the legal standard for a certificate of appealability has not been met. The undersigned therefore recommends that a certificate of appealability be denied.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).